552     UNITED STATES ex rel. DALY *v.* MacFARLAND.

Syllabus.                               [28 App.

# UNITED STATES EX REL. DALY *v.* MACFARLAND.

MUNICIPAL CORPORATIONS; DISTRICT OF COLUMBIA.; LICENSES, REVOCATION
OF; MUNICIPAL REGULATIONS; STATUTES; MANDAMUS.

1. The District of Columbia has no legislative power, it being merely a
   municipal corporation bearing the same relation to Congress that a city
   does to the legislature of the state in which it is incorporated.   (Fol-
   lowing *United States ex rel. Kerr* v. *Ross*, 5 App. D. C. 241.)

2. A municipal corporation has only such powers as are expressly granted
   to it; those   incident to its express powers and implied therein, and
   those indispensable to the declared objects and purposes of the corpora-
   tion; and any doubt as to the existence of a power is resolved against
   the municipality.   (Following *Coughlin* v. *District of Columbia*, 25
   App. D. C. 251.)

3. A license to pursue a lawful calling, such as plumbing and gas fitting,
   is a species of property, the right on the part of the municipality to
   forfeit which, by the revocation of the license, must clearly appear, or
   it will be held not to exist.

4. Where statutes giving the municipal authorities power to make plumb-
   ing regulations and to enforce them in the manner prescribed; provide
   that any person violating such regulations shall be punished by fine or
   imprisonment, such penalty is exclusive, and the authorities have no
   right to impose an additional penalty for the violation of the regula-
   tions by revoking a license regularly issued to a plumber, because of
   his violation of such regulations.   (Construing Acts of Congress of
   April 23, 1892, secs. 1 and 2, 27 Stat. at L. 21, chap. 53, and June
   18, 1898, secs. 1-4, and 30 Stat. at L. 477, chap. 467, and plumbing
   regulations, D. C. secs. 12-14, and distinguishing *Czarra* v. *Medical
   Supervisors*, 25 App. D. C. 448.)

5. The courts will follow an executive contemporaneous construction of a
   statute in those cases only where the language of the statute is not
   clear or admits of two reasonable interpretations.

6. *Quære*, whether the District Commissioners, in granting a license to a
   plumber, have the right in the absence of any statutory authority
   therefor, to insert in the license a stipulation that the license will be

revoked for the first future violation on his part of the plumbing regulations.

7. Acts of executive officers, where there is no room for the exercise of discretion, may be controlled by mandamus.

8. Mandamus is the proper remedy to compel the District Commissioners to restore to the relator his license as a plumber, where he has a clear right to it and the Commissioners have unlawfully revoked it.

No. 1707. Submitted December 4, 1906. Decided January 8, 1907.

HEARING on an appeal by the relator from an order of the Supreme Court of the District of Columbia dismissing a petition for the writ of mandamus against the Commissioners of the District of Columbia.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by the relator, Joseph E. Daly, from the judgment dismissing a petition for a writ of mandamus against the Commissioners of the District of Columbia, Henry B. F. Macfarland, Henry L. West and John Biddle.

The following are the material allegations in appellant's petition: That he is a citizen of the United States and a resident of the District of Coumbia; that "in accordance with the Acts of Congress approved April 23, 1892, Chapter 53, March 3, 1893, Chapter 199, and June 18, 1898, Chapter 467, the said Commissioners on May 3, 1900, duly granted and issued to the relator a license to practice the business of plumbing and gas-fitting as a master plumber and gas-fitter from the 1st day of April, 1900, to the 1st day of April, 1905, and upon the expiration of said license, to wit, on the 21st day of April, 1905, the said Commissioners in accordance with said Acts of Congress duly granted and issued to the relator another license to practice said business as master plumber and gas-fitter from the 1st day of April, 1905, to the 1st day of April, 1910;" that "prior to the issuance of said licenses the relator upon his application was duly examined by the plumbing board and said board reported the said examination to the said Commis-

554    UNITED STATES ex rel. DALY v. MacFARLAND.

Statement of the Case.    [28 App.

sioners who were satisfied from said report that the relator was a fit person to engage in said business as master plumber and gas-fitter. The relator also, as such master plumber and gas-fitter, gave bond which was accepted by said Commissioners and has ever complied with the laws and regulations in force in said District;" that on August 28, 1905, the relator received a letter from the Commissioners directing attention to certain specified defects in the plumbing work installed by the relator in premises No. 501 B street, N. E., and notifying relator to reply to the charges in writing within five days, otherwise his license would be revoked "without further consideration;" that said relator on September 1, 1905, replied in writing to said charges; that the Commissioners on October 10, 1905, made an order revoking relator's license "without any trial or proper consideration of the facts of the matter, but irregularly, hastily and arbitrarily and contrary to law and in disregard of the rights of the relator;" that the Commissioners were without power under the law to revoke said license; that relator thereafter made an application in writing requesting the Commissioners to revoke said order of October 10, 1905, and to reinstate him as such licensed master plumber and gas-fitter, which they declined to do. "Wherefore the petitioner prays:" "That the writ of mandamus issue requiring the said Commissioners to vacate and cancel the said order made by them on October 10, 1905; also to reinstate or relicense the relator as a master plumber and gas-fitter in said District."

In the answer of the Commissioners to this petition, it is admitted that the license revoked on October 10, 1905, was duly issued to petitioner; that "petitioner was duly examined by the Plumbing Board and found to be qualified to engage in said business, and that he gave bond for the faithful performance of his duties." The answer further sets forth that the license of the petitioner was on June 6, 1903, revoked upon similar complaints, and after hearing, on April 13, 1904, restored "on condition that his license as a master plumber be again revoked for the first violation on his part of the plumbing regulations in the future;" that complaints other than the one

referred to in said notice of August 28, 1905, had been received by the Commissioners; that relator's license was revoked on October 10, 1905, *"the said petitioner not having satisfactorily answered the charge of defective plumbing at No.* 501 *B street, northeast;"* that subsequently relator filed a petition for a re-hearing which was granted, briefs filed, and oral hearing given before the full Board of Commissioners on January 10, 1906; that "after full and careful consideration" the Commissioners declined to reverse their original action. Attached to this an-swer is the correspondence with Miss Mary B. Ewing, the own-er of premises No. 501 B street, N. E., mentioned in said notice of August 28, 1905, also letter from other complainants mentioned in said answer, and the report of the Inspector of Plumbing upon the work about which complaints had been made.

The relator thereupon filed a motion to strike out all these exhibits as being "impertinent, immaterial, irrelevant, scanda-lous," and demurred to so much of the answer as was not in-cluded in said motion to strike. The court denied this motion, and overruled the demurrer. A replication was thereupon filed by the relator, to which the Commissioners demurred; where-upon the court sustained the demurrer, and relator electing to stand upon his replication, dismissed the petition.

*Mr. Lorenzo A. Bailey* for the appellant.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stevens,* Assistant, for the appellees.

1. The power to make plumbing regulations is not only con-ferred by Congress, but this Court has upheld them. *Kerr* v. *Ross,* 5 App. D. C. 249. See also *D. C.* v. *Ball,* 22 App. D. C. 543; *Czarra* v. *Board, etc.,* 25 App. D. C. 448.

2. The power to revoke such a license under proper regula-tions undoubtedly exists. Freund, Pol. Power, p. 575, note 26.

The fact that Congress has prescribed a punishment in the

statute by way of a criminal offense is no argument against the power of the Commissioners to revoke the petitioner's license. This provision of the statute does remove from the province of the Commissioners any power to prescribe the penalty in a criminal action; but this is not a criminal action. It is quite a different thing. It is not a question whether this man shall be punished for careless or incompetent work, but whether he shall be permitted to continue in his business as a master plumber and to perform such incompetent work. The statute in express terms gives the Commissioners power to pass regulations upon this subject, and to regulate the practice of plumbing. It is entirely silent upon the question of how or when the license of plumbers may be suspended or revoked. That is left open as a matter of regulation, and necessarily so. The Commissioners have prescribed in great detail how plumbing work shall be conducted, and have added that a violation of the regulations will subject a plumber to a revocation of his license. When a plumber accepts a license with these regulations in force, he accepts the conditions attached to them, and his license is subject to revocation for failure to observe the regulations. See *Wiggins* v. *Chicago,* 68 Ill. 372; *Schwuschow* v. *Chicago,* 68 Ill. 444; *Grand Rapids* v. *Braudy,* 105 Mich. 670; *Hutchins* v. *Durham,* 118 N. C. 457; 5 Cooley's Const. Lim. 5th ed. p. 745; *Harper* v. *Mayor,* 94 Ga. 801; *Grand Rapids* v. *Braudy,* 105 Mich. 670; *Child* v. *Bemus,* 17 R. I. 230.

3. Mandamus is not the proper remedy in any event. If the Commissioners have acted without jurisdiction, their proceedings so showing, then they might be quashed by certiorari. But they have acted, and mandamus cannot control their discretion and compel them to act in a certain way. Mandamus will not lie to control the discretion of municipal officers. High, Extr. Legal Rem. Section 325. The writ of mandamus will not lie to control the action of any officer or body invested with discretionary or quasi judicial powers. *Redfield* v. *Windom,* 19 D C. 54; *Downing* v. *Ross,* 1 App. D. C. 251; *Ross* v. *Goodfellow,* 7 App. D. C. 1, 9, 10; *West* v. *Hitchcock,* 19 App. D. C. 333,

UNITED STATES ex rel. DALY v. MacFARLAND.     557

D. C.]                    Opinion of the Court.

337, 342; *Holloway* v. *Whitely,* 4 Wall. 522; *Deehan* v. *Johnson,* 141 Mass. 23; *Negley* v. *Sturgis,* 44 Mich. 1.

4. Congress must be assumed to have sanctioned sections twelve and thirteen of the Plumbing Regulations by the passage of the act of June 18, 1898. In addition to congressional acquiescence these regulations have been acted on since the 15th of February, 1893, and such action is a contemporaneous, official construction of the meaning of the original and subsequent acts of Congress. *New York, etc., R. Co.* v. *Interstate Commerce Commission* (decided February 19, 1906, adv. sheets No. 8, pp. 272 and 281); *Ross* v. *Goodfellow,* 7 App. D. C. 8.

5. If the plumbing regulations are not in conflict with the acts of Congress there can be no objection to the exercise of a power in a manner adding consistent conditions to the prosecution of the business of plumbing. Generally speaking, State laws and municipal regulations on the same subject, not inconsistent with each other, may be enforced. See 21 Am. & Eng. Enc. Law, p. 955; *United States* v. *Wells,* 2 Cranch, C. C. 45; *McLaughlin* v. *Stephens,* 2 Cranch, C. C. 148; *Ex parte Hong Shen,* 98 Cal. 681; *Hewlett* v. *Camp,* 115 Ala. 499; *Holt* v. *Birmingham,* 111 Ala. 369; *Foster* v. *Commissioners,* 102 Cal. 483; *McInerney* v. *Denver,* 17 Colo. 302; *State* v. *Welch,* 36 Conn. 215; *State* v. *Flint,* 63 Conn. 248.

Mr. Justice ROBB delivered the opinion of the Court:

Inasmuch as the power of the Commissioners to revoke appellant's license is challenged, we pass immediately to a consideration of that question. The Commissioners predicate their action upon sections 12, 13, and 14 of the plumbing regulations of the District promulgated February 15, 1893, and contend that said regulations are authorized by and not in conflict with the enactments of Congress hereinafter set forth. The regulations follow:

"Section 12. Any licensed plumber who shall neglect or refuse to comply with these regulations, or with the conditions of

his permit, shall have his license suspended or revoked, and shall be thereby debarred from obtaining permits or doing plumbing work for such length of time as the Commissioners may deem just and proper, and shall also be liable to prosecution.

Section 13. Bad faith or unreasonable delay in the performance of plumbing work shall be deemed a sufficient reason for subjecting the plumber so offending to a suspension of his license, and every plumber shall be held responsible for the violation of these regulations by mechanics, laborers, and helpers employed by him.

Section 14. No permit shall be issued to any licensed plumber during the time that he shall fail to remedy any defective work, after the sending of a written notice that he has been held responsible therefor under these regulations."

It is well settled that the District of Columbia has no legislative power, it being merely a municipal corporation bearing the same relation to Congress that a city does to the legislature of the State in which it is incorporated. *United States ex rel. Kerr* v. *Ross,* 5 App. D. C. 241, 253; *Barnes* v. *District of Columbia,* 91 U. S. 540, 23 L. ed. 440; *Metropolitan R. Co.* v. *District Columbia,* 132 U. S. 1, 33 L. ed. 231, 10 Sup. Ct. Rep. 19; *District of Columbia* v. *Woodbury,* 136 U. S. 450, 34 L. ed. 472, 10 Sup. Ct. Rep. 990; 22 Ops. Atty. Gen. 59.

The next proposition is equally well established, namely, that "a *municipal corporation possesses and can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." Dill. Mun. Corp. 4th ed. Sec. 89. Judge Dillon in support of the text cites numerous cases. To these may be added: *Greater New York Athletic Club* v. *Wurster,* 19 Misc. 443, 43 N. Y. Supp. 705; *Los Angeles City Water Co.* v. *Los Angeles,* 88 Fed. 720;

*Coughlin* v. *District of Columbia,* 25 App. D. C. 251. See also 21 Am. & Eng. Enc. Law, 2d ed. p. 948.

An examination of existing congressional legislation relating to the licensing and control of plumbers in the District will tend to elucidate the question under consideration. Sections 1 and 2 of the Act of April 23, 1892 (27 Stat. at L. 21, chap. 53), "to authorize the appointment of an inspector of plumbing," provide:

"That the Commissions of the District of Columbia and their successors be, and they hereby are, authorized and empowered to make, modify, and enforce regulations governing plumbing, house drainage, and the ventilation, preservation, and maintenance in good order of house sewers and public sewers in the District of Columbia, and also regulations governing the examination, registration, and licensing of plumbers and the practice of the business of plumbing in said District; and any person who shall neglect or refuse to comply with the requirements of the provisions of said regulations after ten days' notice of the specific thing required to be done thereunder, within the time limited by the Commissioners for doing such work, or as the said time may be extended by said Commissioners, shall upon conviction thereof be punishable by a fine of not more than two hundred dollars for each and every such offense, or in default of payment of fine, to imprisonment not to exceed thirty days.

Sec. 2. That the said Commissioners and their successors be, and they hereby are, authorized and empowered to require every person licensed to practise the business of plumbing in the District of Columbia, before engaging in the said business, to file a bond in such amount not exceeding the sum of two thousand dollars and with such number of sureties as the said Commissioners shall determine, conditioned upon the faithful performance of all work in compliance with the plumbing regulations, and that the District of Columbia shall be kept harmless from the consequence of any and all acts of the said licensee during the period covered by the said bond."

Section 3 authorizes the grant of permits to connect build-

.560 ´ UNITED STATES ex rel. DALY v. MacFARLAND.

Opinion of the Court. [28 App.

ings, premises, or establishments with any sewer, water or gas main, and certain other permits. Section 4 prescribes the duties of the Inspector of Plumbing. The provisions of this Act were, under the Act of March 3, 1893 (27 Stat. at L. 543, chap. 199) extended to the practice and business of gas fitting. In *United States ex rel. Kerr* v. *Ross,* supra, this act was very carefully considered, and the court, after an analysis of leading cases involving the power to enact such legislation, said:

"The power of Congress to legislate with respect to regulations intended to secure the public safety and health, within the District of Columbia, is neither greater nor less than that of State legislatures within their several jurisdictions, and may be conceded to extend to regulations affecting the trade of plumbing, as well as others, in so far as the same may be necessary for those purposes."

The court, however, held that the Commissioners had no power to delegate to a Board of Examiners the discretionary right to pass finally upon applications for plumbing licenses, and that regulations to that effect promulgated by the Commissioners were unwarranted and void. This decision was followed by the Act of Congress of June 18, 1898, (30 Stat. at L. 477, chap. 467), "to regulate plumbing and gas fitting in the District of Columbia." The first four sections of said Act are as follows:

"That the Commissioners of the District of Columbia be, and they are hereby, authorized to appoint a plumbing board to be composed of two master plumbers, and one journey-man plumber competent to be licensed as master plumber, and two employees of the District of Columbia having a knowledge of plumbing and gas fitting and sanitary work, whose compensation shall be three hundred dollars per annum each, payable monthly. A majority of the board shall be deemed competent for action.

Sec. 2. That in addition to such advisory duties as said Commissioners shall assign them, it shall be the duty of said plumbing board to examine all applicants for license as master plumbers or gas fitters and to report to said Commissioners, who, if

UNITED STATES ex rel. DALY *v.* MacFARLAND.     561

D. C.]                    Opinion of the Court.

satisfied from such report that the applicant is a fit person to engage in the business of plumbing or gas fitting, shall issue a license to such person to engage in such business.

Sec. 3. That applicants for licenses as master plumbers or gas fitters must be twenty-one years of age, must make application in their own hand writing, and must accompany such application with a certificate as to good character, signed by at least three reputable citizens of the District of Columbia.

Sec. 4. That the fee for a license as master plumber or gas fitter shall be three dollars."

Sections 5, 6 and 7 are not material to the issue here. Section 8 is as follows:

"That any person violating any of the provisions of this Act shall, on conviction thereof in the police court, be punished by a fine of not less than five dollars nor more than one hundred dollars; and in default of payment of such fine such person shall be confined in the workhouse of the District of Columbia for a period not exceeding six months; and all prosecutions under this Act shall be in the police court of said District, in the name of the District of Columbia."

It will be observed that these Acts taken together are comprehensive, and cover not only the licensing of plumbers and the practice of plumbing, but also specify the authority of the Commissioners in respect thereto. The constitutional guaranties of the liberty and property of the individual undoubtedly include and protect him in the exercise of his right to earn his living by following a lawful calling, and this right is subject only to reasonable control. That such a license as was revoked in this case is a species of property goes without saying. The right to forfeit this property by the revocation of the license must clearly appear, or it must be held not to exist. Judge Dillon says (sec. 345):

"A corporation, under a general power to make by-laws, cannot make a by-law ordaining a forfeiture of property. To warrant the exercise of such an extraordinary authority by a local and limited jurisdiction, the rule is reasonably adopted that it

562     UNITED STATES ex rel. DALY v. MacFARLAND.

Opinion of the Court.          [28 App.

must be *plainly,* if not, indeed, *expressly,* conferred by the legislature."

Certainly such power will not be presumed to exist in statutes in restraint of the ordinary and legitimate avocations of life, avocations in which the mass of human toilers gain their livelihood and contribute to the welfare and happiness of society. In *Greater New York Athletic Club* v. *Wurster,* supra, the court held that a grant of power to abridge and curtail the exercise of the right of the individual to engage in or pursue a business or calling lawful in itself can only be justified and sustained on the theory that the exercise of such power is necessary to the public welfare and safety, and such power cannot be presumed, but must be clearly expressed.

In *State, Staates, Prosecutor,* v. *Washington,* 44 N. J. L. 605, 43 Am. Rep. 402, it was held that under the charter of the borough prescribing one penalty, the borough had no authority to enlarge upon that penalty by providing in an ordinance for a forfeiture of a license for breach of condition mentioned therein. The court observed that any reasonable doubt as to the existence of the power to deprive an individual of a valuable franchise should be resolved against the erercise of such power.

In the case of *State ex rel. Heise* v. *Columbia,* 6 Rich. L. 404, an ordinance of the town council, declaring that any retailer who should sell or give any spirituous liquors to a slave without a written permit should forfeit his license, was held void as being in excess of the penalty imposed for the violation of the town ordinances under the act of incorporation.

Section 1 of said Act of 1892 empowers the Commissioners to "make, modify, and enforce regulations governing plumbing" in the District of Columbia, and also "governing the examination, registration, and licensing of plumbers *and the practice of the business of plumbing in said District.*" Immediately following this it is ordained that "any person who shall neglect or refuse to comply with the requirements of the provisions of *said regulations* aften ten days' notice of the specific thing required to be done thereunder  *  *  *  shall upon convic-

tion thereof be punishable by a fine of not more than two hundred dollars for each and every such offense, or in default in payment of fine, to imprisonment not to exceed thirty days." It is manifest that the penalty prescribed by Congress for a violation of the regulations, followed by a neglect or refusal to remedy said violation in accordance with the direction of the Commissioners, is limited to $200 fine and alternative imprisonment. In other words, Congress has given the Commissioners power to make regulations and enforce them in the manner prescribed in the Act. As an additional safeguard Congress has provided in section 2 of said Act of 1892, that every plumber, that is, the man responsible for the performance of the work, shall file a bond "conditioned upon the faithful performance of all work in compliance with the plumbing regulations." In the brief of the Commissioners it is stated that the regulations here challenged "have been acted on since the 15th of February, 1893, and such action is a contemporaneous official construction of the meaning of the original and subsequent Acts of Congress above mentioned." Various cases are cited in support of this proposition, but an examination of these cases shows that they have reference to the interpretation of ambiguous statutes. It has been many times determined that courts will follow an executive contemporaneous construction in those cases only where the language of the statute is not clear or admits of two reasonable interpretations. This doctrine is concisely stated in *Houghton* v. *Payne,* 194 U. S. 88, 99, 48 L. ed. 888, 891, 24 Sup. Ct. Rep. 590, where it is said:

"But in addition to these considerations it is well settled that it is only where the language of the statute is ambiguous and susceptible of two reasonable interpretations that weight is given to the doctrine of contemporaneous construction. *United States* v. *Graham,* 110 U. S. 219, 28 L. ed. 126, 3 Sup. Ct. Rep. 582; *United States* v. *Finnell,* 185 U. S. 236, 46 L. ed. 890, 22 Sup. Ct. Rep. 633. Contemporaneous construction is a rule of interpretation, but it is not an absolute one. It does not preclude an inquiry by the courts as to the original correctness of such construction. A custom of the department, how-

564     UNITED STATES ex rel. DALY v. MacFARLAND.

Opinion of the Court.                    [28 App.

ever long continued by successive officers, must yield to the positive language of the statute."

We fail to discover wherein the Act of 1892 is ambiguous, and we are equally at a loss to discover any language susceptible of the construction necessary to be placed thereon to warrant these regulations.

But, the Commissioners contend that, the regulations providing for such revocation having been promulgated in 1893, Congress must be presumed to have sanctioned them by the passage of the Act of 1898 to further regulate plumbing in the District. A careful analysis of the Act of 1898 fails to disclose anything therein supporting this contention. On the contrary, we think the provisions of the Act inconsistent therewith. The Act is carefully and comprehensively drawn. It provides for a salaried plumbing board "to be composed of two master plumbers, one journey-man plumber competent to be licensed as master plumber, and two employees of the District of Columbia having a knowledge of plumbing and gas fitting and sanitary work," upon whose report in respect to the qualifications of applicants for licenses the Commissioners, "if satisfied from such report that the applicant is a fit person to engage in the business of plumbing or gas fitting, shall issue a license to such person to engage in such business." The Act further provides that applicants for licenses must file certificates of good character "signed by at least three reputable citizens of the District of Columbia." The Act also provides that it shall be unlawful for any person not licensed as a master plumber, or his employees, to engage in the work of plumbing in the District, and it also makes it unlawful for the owner or lessee of any building in the District, or his agent or representative, to knowingly employ an unlicensed person to do plumbing work in the District. It is next provided that violations of the Act shall be tried in the police court and punished upon conviction by fine and alternative imprisonment in the workhouse. Thus we see that in the Act of 1898 Congress perfected existing legislation relating to the granting of licenses to plumbers and the practice of plumbing in the District. In this Act a license

UNITED STATES ex rel. DALY v. MacFARLAND.        565

D. C.]                    Opinion of the Court.

board is created, its powers and duties carefully and fully pre-
scribed, and yet no authority whatever is conferred upon the
board or upon the Commissioners to revoke a license once is-
sued. The original Act empowered the Commissioners to issue
licenses, and, in terms, prescribed the punishment to be meted
out to plumbers and house-owners and others who neglected or
persisted in doing work contrary to the plumbing regulations.
No express provision, however, was made for the punishment
of persons not licensed who undertook to engage in the busi-
ness. The Act of 1898 supplies this omission, and the Acts
taken together leave nothing to be inferred or supplied.

That the Commissioners have no authority, and that Con-
gress deems them without authority, to promulgate and enforce
a regulation providing for the revocation of a license where the
statute contains no express provision for such revocation, is,
clearly shown by a short analysis of some of the licensing Acts
of Congress in force in the District. Section 7 of the Act of
July 1, 1902 (32 Stat. at L. 626, chap. 1352), provides for
license taxes in the District, and paragraph 30 of said section
is as follows: "That owners or managers of Turkish, Russian,
or medicated baths shall pay a license tax of twenty-five dollars
per annum," and paragraph 47 of the same section ordains
"that any person violating any of the provisions of this sec-
tion shall, on conviction thereof in the police court of the Dis-
trict of Columbia, be punished by a fine of not more than five
hundred dollars for each offense, and in default of payment
by imprisonment not exceeding thirty days, in the discretion
of the court, except as otherwise provided in this section." That
Congress deemed additional legislation necessary to empower
the Commissioners, or the assessor, to make and enforce a reg-
ulation providing for the revocation of a license once granted to
conduct such a bath establishment, and the closing up of such
establishment, is shown by the Act of April 12, 1904 (33 Stat.
at L. 174, chap. 1251), amending said paragraph 30, wherein it
is provided that "in addition to such penalty, it shall be the duty
of the assessor to revoke the license of the owner or manager of

566    UNITED STATES ex rel. DALY v. MacFARLAND.

Opinion of the Court.                    [28 App.

the establishment wherein the provisions of this paragraph shall have been violated."

The Act of March 3, 1893 (27 Stat. at L. 563, chap. 204), created an excise board to act on applications for and issue licenses to sell intoxicating liquors, and gave said board the authority to make "such rules and regulations for carrying into effect this act as they may deem requisite and proper," yet Congress thought it necessary in section 13 of said Act to specifically provide, in addition to the punishment by fined and alternative imprisonment for a second conviction for violation of the provisions of the Act, that the licensee should *"have his license revoked,"* and that "after second conviction no license shall thereafter be granted to said party."

The Act of January 26, 1887 (24 Stat. at L. 365, chap. 45), was with reference to places of amusement, halls, buildings, etc., over 50 feet in height being provided with "iron fire-escapes and combined stand-pipes and ladders, or either of said appliances as may be approved and adopted by the Commissioners," and prescribed as penalty for non-compliance with the Act a fine of $100. The Joint Resolution of February 26, 1892 (27 Stat. at L. 394) is as follows:

"That all licenses issued by the Commissioners of the District of Columbia to proprietors of theaters or other public places of amusement in the city of Washington, District of Columbia, and now in force, be and the same are hereby terminated, unless the persons holding such license shall within ten days after due notice comply with such regulations as may be prescribed for the public safety by the Commissioners of the District of Columbia.

Sec. 2. That the Commissioners of the District of Columbia are hereby authorized and empowered to make and enforce all such reasonable and usual police regulations in addition to those already made under the act of January twenty-six, eighteen hundred and eighty-seven, as they may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District of Columbia."

It is apparent that, if the Commissioners had the power under the second section of this Act, which is very broad in its terms, to make a regulation providing for the revocation of a license already issued, the first section is idle and unnecessary. Moreover, that Congress was plainly of the opinion that the Commissioners were without authority to make and enforce a regulation beyond the scope of section 2 of the last Act is obvious by a reference to the Joint Resolution of March 1, 1901 (31 Stat. at L. 1463), which is as follows:

"That any license issued by the assessor of the District of Columbia to the proprietor of a theater or other public place of amusement in the District of Columbia *may be terminated* by the Commissioners of the District of Columbia whenever it shall appear to them that, after due notice, the person holding such license shall have failed to comply with such regulations as may be prescribed by the said Commissioners for the public decency."

The Act of March 2, 1895 (28 Stat. at L. 709, chap. 164), "to regulate the sale of milk in the District of Columbia," gives the health officer authority "to make and enforce regulations" "to carry into effect the provisions of this Act," and yet section 14 of said Act in addition to prescribing punishment by fine and imprisonment, or both, for violation of the provisions of the Act, provides "if the person so convicted of a second or subsequent offense hold a permit under this Act, the same shall be cancelled and no permit shall be issued to said person for a period of six months."

In the Act of Feb. 25, 1897 (29 Stat. at L. 594, chap. 315), "to license billiard and pool tables in the District of Columbia," it is provided that "any person violating the provisions of this section shall, on conviction, be punished by a fine of not less than five nor more than forty dollars, and shall in addition forfeit his or her license, in the discretion of the Commissioners of the District of Columbia." There is nothing in the Act conferring power upon the Commissioners or upon any District official to make regulations for the control of the subject matter of the Act, but the Commissioners undoubtedly exercise

**568**    UNITED STATES ex rel. DALY *v.* MacFARLAND.

Opinion of the Court.                    [28 App.

control over pool and billiard rooms under the police regulations.

The Act of June 3, 1896 (29 Stat. at L. 198, chap. 313), "to regulate the practice of medicine and surgery, to license physicians and surgeons," provides for a board of medical supervisors with authority to make "such regulations as may be necessary to carry into effect the provisions of this Act;" and the Act prescribes that for violation of the provisions of the Act or of the regulations promulgated thereunder the offender may be punished by fine or imprisonment, or by both. In addition, the board is given specific authority to refuse to grant or *to revoke* a license for certain specified actions.

In the Act of July 1, 1902 (32 Stat. at L. 728, chap. 1378), regulating the sale of viruses, serums, etc., in the District of Columbia, a board is created "to promulgate from time to time such rules as may be necessary in the judgment of said board to govern the issue, suspension, and *revocation* of licenses for the maintenance of establishments," and the Act also provides a penalty by fine or imprisonment, or by both, for violation of the provisions of the Act or of the regulations made by authority thereof.

We have carefully examined the cases to which the Commissioners have referred in their brief, and we find nothing therein in conflict with the views herein expressed. In several of those cases the business or calling regulated was not lawful in itself, or, at least, not necessary to the public welfare, as, for instance, the sale of intoxicating liquors, and hence the legislature had given the municipality much wider scope and much broader powers of supervision and control than Congress has given here. In the *Czarra Case,* relied on by the Commissioners (25 App. D. C. 448), the right of revocation was expressly conferred by Congress. Of course, we do not wish to be understood as intimating that it is beyond the power of Congress to authorize the Commissioners to revoke a license for a breach of its condition, for in *United States ex rel. Kerr. v. Ross,* 5 App. D. C. 241, 253, we held that a licensee has no vested right to pursue his calling under a license authorized

UNITED STATES ex rel. DALY v. MacFARLAND.     569

D. C.]                    Opinion of the Court.

by legislation that has been superseded. The very theory upon which such legislation rests is inconsistent with any other conclusion. The licensee takes his license subject to the continuing power of control by Congress. As time changes, standards change, and what would be sufficient regulation today would perhaps be insufficient tomorrow. We do hold, however, that under existing legislation the Commissioners of the District have no authority to impose an additional penalty for a violation of the plumbing regulations by revoking a license regularly issued.

It is not necessary to notice the allegation in the answer that a former license of the petitioner was revoked and restored "on condition that his license as a master plumber be again revoked for the first violation on his part of the plumbing regulations in the future," because the license under consideration contains no such stipulation. Whether the Commissioners may lawfully insist upon such a stipulation before granting a license, the statute making no provision therefor, we express no opinion.

Of the other questions suggested it is necessary to notice but one, and that is whether mandamus is the proper remedy. Whilst it is true that matters calling for discretion on the part of executive officers are beyond the control of the courts through the writ of mandamus, it is equally true that in cases, where there is no room for the exercise of discretion, their acts may be controlled by mandamus. "The acts of all its officers" (P. O. Dept.), said Mr. Justice Peckham in *American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 108, 110, 47 L. ed. 96, 97, 23 Sup. Ct. Rep. 33, "must be justified by some law, and in case an official violates the law to the injury of an individual the courts generally have jurisdiction to grant relief. * * * Otherwise, the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law and is in violation of the rights of the individual." See also *United States ex rel. Romero* v. *Cortelyou,* 26 App. D. C. 298. We think the present case within the rule laid down in these cases, and that the relator, having a clear right to the license which the

Commissioners attempted without authority to revoke, is entitled to the relief prayed for.

The judgment appealed from must be reversed with costs, and the cause remanded to the Supreme Court of the District of Columbia with direction to issue the writ of mandamus to the Commissioners of said District commanding them to restore to the relator his license as a master plumber and gas fitter. And it is so ordered.                        *Reversed.*