# DRAKE *v.* UNITED STATES EX REL. BATES.

INSURANCE; OFFICERS; SUPERINTENDENT OF INSURANCE; BROKERS AND AGENTS; LICENSES; STATUTES; MANDAMUS.

1. The superintendent of insurance of this District has no power to make and enforce an interpretation of the laws of the District relating to insurance companies, agents, or brokers, such power being a judicial one, which can be exercised by the courts alone.

2. Sec. 646 D. C. Code (31 Stat. at L. 1290, chap. 854), giving to the superintendent of insurance of this District power "to make such rules and regulations, subject to the general supervision of the commissioners, not inconsistent with law, as to make the conduct of each company in the same line of insurance to conform in doing business in the District," does not authorize the superintendent to make regulations for the classification of persons required to take out "general insurance licenses," by the provisions of sec. 654, D. C. Code, which requires insurance brokers and agents to take out such licenses.

3. When an insurance broker or agent takes out a license under sec. 654, D. C. Code, he may act as agent of any company or companies and may procure insurance in any company authorized to do business in the District; and insurance companies doing business in the District of Columbia are under no obligation to apply for licenses for their brokers or agents.

4. In respect to issuing general insurance licenses to persons desiring to do business as insurance brokers or agents in this District, the superintendent of insurance is a ministerial officer, vested with no discretionary power to refuse such a license when the statutory fee is paid or tendered; and he may be compelled by mandamus to issue such a license upon compliance of the applicant with such condition. (Following *Macfarland* v. *United States*, 18 App. D. C. 554.)

No. 1846. Submitted January 10, 1908. Decided February 4, 1908.

HEARING on an appeal by the respondent, the superintendent of insurance of the District of Columbia, from an order of the Supreme Court of the District of Columbia sustaining a de-

murrer to a return to a petition for the writ of mandamus to compel him to issue an insurance broker's license to the relator, and directing the issuance of the writ.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

James A. Bates & Company, a partnership composed of James A. Bates and E. B. Townsend, residing and doing business in the District of Columbia, filed this petition against Thomas E. Drake, superintendent of insurance of the said District, for mandamus to compel the said Drake to issue to them a license for the fiscal year commencing May 1, 1907, and ending April 30, 1908, entitling them to carry on the business of insurance agents.

The petition alleged that for some years past petitioners have been engaged in the insurance and brokerage business in said District, duly licensed therefor, and have for some years represented, among other companies, the Firemen's Insurance Company, of the District of Columbia, of which they were one of the general agents. It becoming necessary for them to renew the license for the year 1907, they made application therefor. The superintendent furnished them with a blank form, requiring them, under oath, to append a true list of the names and addresses of all persons from whom applications or business, either directly or indirectly, had been received between May 1, 1906, and April 30, 1907, inclusive. The form attached contained headings for entry of name of "Agent," "Address," "Class," (as "principal agent," "ordinary," "industrial," or "broker"), and date of placing first risk. A notice was also given that, as a condition precedent to the issue of the license requested, they should also furnish the names of persons to whom they had paid commissions in order to secure business. Petitioners deny the right of the superintendent to impose any such conditions, and aver that, even if the power to make rules for the issue of licenses existed, the requirements aforesaid are arbitrary, unreasonable, and unjust, and compliance therewith might become the basis for their prosecution. Petitioners

declined to comply with the said requirements, and tendered the sum of $50 to the said superintendent as the lawful fee, and demanded the issue of their license. The superintendent refused to receive the money and to issue the license.

They further allege that the Firemen's Insurance Company wrote them on September 9, 1907, declining to pay commission on any business done for them until notified by the superintendent that they were licensed insurance brokers. They alleged damage to them by the refusal to issue the license, because it deprives them of a vested right to do business as they had long been accustomed to do.

The return to the rule to show cause, made by the superintendent, admits the general allegations of the petition in regard to the business of the petitioners, and assigns cause for refusal to issue the license as follows:

"Answering paragraph 4, defendant says that the said application for a license to act as agent of the Firemen's Insurance Company was made to the department of insurance by the said company; that it is the custom in the District, and the rule of the insurance department, that when agents are to be licensed the insurance company makes a requisition upon the superintendent of insurance, giving a list of agents and their addresses, whom it desires to be licensed as its agents; that the Firemen's Insurance Company, on the 30th day of April, 1907, filed such a requisition with the defendant, asking the licensing (among others) of Jas. A. Bates & Company (E. B. Townsend); a copy of said requisition is filed herewith and prayed to be read as a part hereof; that the said affidavit and blank to be filed, as set forth in said paragraph, was not sent to the petitioners by the defendant, but was sent by the defendant to the Firemen's Insurance Company with the statement that the information called for therein should be furnished by the said company as a condition prerequisite to its being licensed for the ensuing year; that thereupon the said company called upon the said petitioners to furnish the said information, but the said petitioners refused to furnish the same to the said company, and, upon the said company's insisting upon the same,

withdrew as agents of the said company; and the latter thereupon wrote the defendant, revoking its said requisition calling for the licensing of the petitioners as agents for the said company, as follows, on August 21, 1907:

" 'I respectfully notify you that Messrs. Jas. A. Bates & Co. have this day terminated their agency with this company. I therefore withdraw the requisition which was sent to your department for the issuance of a license to them as agents of this company.'

"That the defendant did not send a notice to the petitioners that they must furnish the information called for in said blank as a condition precedent to the issuance to them of a license, but the said notice was sent, as above stated, to the Firemen's Insurance Company; that the statement in said petition that such information is called for to satisfy the personal curiosity of the defendant is false, malicious, and scandalous, nor was such information to be used as a basis of future criminal prosecution against the said petitioners or any of those from whom such information was obtained or to be obtained.

"5. Answering paragraph 5, defendant says that the said Firemen's Insurance Company was called upon to furnish the said information—not the petitioners—to the department of insurance; that it was supposed the said company would do this through its various officers and agents; that it could do so if it desired, and that it seemed to be willing and anxious to assist the department in obtaining such information; that the petitioners were not called upon by the said company to furnish information they did not possess, and that if they were complying with the law they had nothing to fear by giving such information to their principal, to be in turn given to the superintendent of insurance."

The respondent admits the tender of the money for the license, but says it was made after the Fireman's Insurance Company had withdrawn the requisition for the petitioners as its agents; and further because the said company had not been licensed to do business in the District. The conclusion is "that a license to an agent cannot lawfully issue until the company

for which such agent is to act is first licensed." The return further says that the agency of the said company was terminated by the petitioners, and not by the company, which is willing to continue said agency only on condition that petitioners furnish the said company the information called for in the said blank form furnished by respondent, which in turn said company would deliver to respondent.

The court sustained a demurrer to this return, and entered an order for the issue of the mandamus, from which the respondent has appealed.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stephens,* Assistant, for the appellant.

*Mr. Wilton J. Lambert, Mr. Edward B. McLean,* and *Mr. Rudolph H. Yeatman* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The right of the petitioners is founded on sec. 654 of the Code [31 Stat. at L. 1292, chap. 854], which is part of the subchapter 5 of chapter 18, relating to corporations. So much of the same as is pertinent is here given:

"Sec. 654. Insurance Agents.—No person, firm, or corporation shall act as agent for any insurance company or association, or act as insurance broker or agent for procuring or placing insurance for commissions, compensation, gain, or profit, without first having obtained a license as an insurance agent or broker from the superintendent of insurancce of the District. Every such license certificate shall have printed conspicuously upon its face the words 'general insurance license,' and for such license the sum of fifty dollars shall be paid annually in the month of March to the collector of taxes of said District.   *   *   *   No person, firm or corporation, or association shall allow or pay any commission, rebate, or compensation whatever, directly or indirectly, to, for, or in behalf of

any person, firm, or corporation doing business in the District of Columbia, not licensed as herein provided   Any violation of this section shall be a misdemeanor, and, on conviction in the police court of said District, be subject to the penalties provided in sec. 648 aforesaid for the misdemeanors therein described: *Provided,* That licenses to firms, corporations, or associations shall be held to extend only to the bona fide copartners, not exceeding two in one firm, and to the secretary and one assistant secretary of each corporation or association so licensed any one of whom may be held and dealt with on behalf of such firm, corporation, or association for any violation of the provisions hereof."

The respondent, as superintendent of insurance, relies upon the power to make regulations relating to the licenses required by sec. 654, as conferred by other sections.   Sec. 645, which creates the office of superintendent, contains this clause: "Said superintendent shall have supervision of all matters pertaining to insurance companies and beneficial orders and associations, subject only to the general supervision of the commissioners." Sec. 646 provides in its first clause: "It shall be the duty of the said superintendent to see that all laws of the United States relating to insurance or insurance companies, benefit orders, and associations doing business in the District are faithfully executed."   The section then proceeds to make regulations for the permission of such companies to do business in the District.   The concluding sentence of the section reads: "Said superintendent shall have power to make such rules and regulations, subject to the general supervision of the commissioners, not inconsistent with law, as to make the conduct of each company in the same line of insurance to conform in doing business in the District."   A number of other sections prescribe many requirements to be complied with by companies doing business in said District, which relate to their reports, capital required, deposits of money by foreign companies, and so forth, besides similar reports to be made by local companies.   Sec. 645 to 653 inclusive.

On January 30, 1902, the superintendent addressed a com

munication to the commissioners, in which he said: "It being the duty of the superintendent of insurance to interpret and apply the Code of law of the District  *  *  *  relating to insurance companies and insurance agents, I therefore, concurring in the opinion of the city solicitor, beg leave to submit to you for your approval the following rulings on secs. 646, 654, and 655 in regard to licenses, *viz.*" His first ruling was that sec. 646, so far as it refers to licenses, relates to the insurance company itself. Second, secs. 654 and 655 refer to agencies, and not to companies, unless acting as agents. He then proceeds to enumerate the distinguishing features of his ruling in respect to companies, agents, licenses, and fees to be paid, classifying them as follows: (2) Each local and foreign company desiring to act as agent for receiving business for another company, or from agents or superintendents thereof, is required to procure a "general insurance license,"—fee to be paid $50. (3) Foreign companies must be licensed under sec. 646 before they can in any way do business in the District. Issuing its own policies not required to be represented by a general agent. If it has such representative he must hold a "general insurance license," and pay a fee of $50. (4) The "general insurance license" may be issued to persons, or firms of two persons, or to a corporation; and under this form of license an unlimited number of companies may be represented by an agent; and power is granted to the licensee to appoint solicitors for each company he represents. Policy-writing agent may also act as broker. Fee, $50. (5) Broker's "general insurance license." This carries with it all the privileges granted to a policy-writing agent, except that the licensee cannot issue policies nor appoint solicitors. A broker represents no company, but places the business he contracts wherever he elects in companies licensed to do business in the District. Fee, $50. (6) Solicitor's license. A solicitor must be employed in some capacity by a company or its principal agent. License privilege limited to one company.

It is quite clear that no provision of the law conferred or attempted to confer upon the superintendent of insurance the

power to make and enforce an interpretation of the laws relating to insurance companies, agents, or brokers. Such power is a judicial one, that can be exercised by the courts alone. If the rulings aforesaid, approved by the commissioners, are intended as regulations for the proper enforcement of the law, they find no support in the provisions before stated as relied on by the superintendent. Whatever the power in regard to the enforcement of the law and the making of regulations that was conferred by the provisions of sec. 646, it does not embrace the power to make regulations for the classification of persons required to take out a "general insurance license" by the provisions of sec. 654. That section makes no such classification as that declared by the superintendent. It embraces those who act as agents for any insurance company, and as brokers or agents, requiring one fee and one form of license, which must have printed conspicuously on its face the words "general insurance license." The solicitors for general insurance and that known as "industrial" are provided for separately in sec. 655. Sec. 654 imposes the duty upon every broker or agent to obtain this license, and when so licensed there is nothing to prevent him from acting as the agent of any company or companies, or from procuring insurance in any company, provided the same shall be authorized to do business in the District. If he, while doing business under said license, shall violate any provision of the law in respect of the payment of commissions, rebates, or compensation, he is amenable to the punishment for the offense that is prescribed in the same section.

All insurance companies are compelled to comply with the provisions of the several sections relating to them before they can carry on business through, or issue insurance at the request of, any licensed agent or broker. The companies are under no obligation to apply for licenses for their agents or brokers. They must apply for their own licenses, and, if located outside the District, must appoint some suitable person as attorney upon whom legal process may be served. Sec. 646. All that persons who propose to take out the "general insurance license" are required to do is to apply therefor to ie superin-

tendent and pay the statutory fee.   They have then the power
to make arrangements for insurance with any company au-
thorized to do business in the District, upon such terms and
with such general or special authority as may be agreed upon.
No power is given the superintendent to impose any conditions
upon them such as were imposed upon the petitioners in this
case, as conditions precedent to the issue of the license.   The
regulatory powers of the superintendent are limited by law
to the companies, and do not extend to persons seeking to en-
gage in business as agents and brokers under a "general in-
surance license."   His charge to see that the laws are executed
authorizes him, upon information received of violations of
the law by such licensed agents and brokers, to cause them to
be prosecuted therefor.   In respect of issuing the license to
such applicants, the superintendent is a ministerial officer vested
with no discretionary power in the premises.   The calling of
agents and brokers is a legitimate and lawful one, though sub-
ject to the power of the government to compel them to pay a
license therefor.   As to them, the imposition of the fee is ap-
parently for the purpose of raising revenue.   It is the right,
therefore, of any citizen to engage in the calling at will, upon
tendering the fee required by law to the officer charged with the
duty of receiving it and issuing the license.   With no power
to add to the requirements of the law, it is his plain duty to
receive the fee when tendered and issue the formal license re-
quired by the law. · *Macfarland* v. *United States,* 18 App. D.
C. 554, 564.

Believing that the court was right in ordering the mandamus
to issue, the judgment is affirmed, with costs.        *Affirmed.*