## HUTCHINS MUT. INS. CO. OF DISTRICT OF COLUMBIA v. HAZEN et al.

### No. 7316.

United States Court of Appeals for the District of Columbia.

Argued Feb. 6, 1939.

Decided April 10, 1939.

Rehearing Denied May 18, 1939.

Irvin Goldstein and William R. Lichtenberg, both of Washington, D. C., for appellant.

Elwood H. Seal, Corp. Counsel, D. C., Vernon E. West, Principal Asst. Corp. Counsel, D. C., and Lloyd B. Harrison, Sp.

Asst. Corp. Counsel, D. C., all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

This is an appeal from an order and judgment of the District Court denying plaintiff's (appellant's) application for injunction and dismissing the complaint.

Appellant is a local mutual insurance company and is licensed to do business in the District of Columbia under authority of an Act of Congress passed in 1922 entitled "An Act To regulate marine insurance in the District of Columbia, and for other purposes".[1] The Act covers not only what is called marine insurance but as well practically all other kinds of insurance, including insurance "on automobiles against loss or damage from collision or theft, and against liability of the owner or user for injury to person or property caused by his automobile". Section 3. Section 4 provides certain conditions precedent to the organization of "domestic mutual companies" and requires that such a company, before obtaining a license to do business, shall have "received in cash, with respect to each * * * class of insurance written, at least one advance periodical premium on each * * * application, aggregating at least $10,000"; and shall have a surplus of $10,000 in money or other lawful investments above its liabilities including the liability equal to the aggregate amount of premiums so advanced. Appellant was in the automobile liability insurance business in the District of Columbia prior to 1938. In that year Congress passed a compulsory taxicab insurance act,[2] the effect of which was to impose on each taxicab owner or operator the duty to file with the Public Utilities Commission "for each motor vehicle to be operated a * * * policy * * * of liability insurance * * * in a solvent and responsible * * * insurance company authorized to do business in the District of Columbia * * * in such form and on such terms or conditions as the Commission may direct".[3] The language in the act particularly pertinent to this controversy is as follows:

"Any such policy of liability insurance shall be issued only by such insurance companies as may have been authorized to do business in the District of Columbia * * *. The Superintendent of Insurance of the District of Columbia shall be empowered to make all reasonable rules and regulations relating to the writing of taxicab insurance and shall be empowered to govern the maximum rates to be charged on such insurance. * * * It shall be unlawful to operate any vehicle subject to the provisions of this paragraph unless such vehicles shall be covered by * * * [a] policy of liability insurance as provided herein. The Public Utilities Commission shall have the power to make all reasonable rules and regulations which, in its opinion, are necessary to make effective the purposes of this section.

* * * * * *

"Any violation of this section or of the regulations lawfully promulgated thereunder shall be deemed a misdemeanor and upon conviction shall be punishable by a fine of not more than $300 or by imprisonment for not more than ninety days, and/or cancelation of license."

Claiming to act under authority of this statute, the Superintendent of Insurance promulgated nineteen regulations applicable to companies writing taxicab insurance:

1 & 2. Policies must be in a form approved by the Superintendent. 3. Maximum rates are fixed. 4 & 5. Premiums must be collected in advance and five-day notice of cancelation given to the Commission. 6, 7 & 8. Complete records must be kept of accidents, claims, suits, etc., and payments must be made by company check. 9. Rebating is defined and attention is called to the statutory prohibition. 10. Companies must keep a register of all policies issued, lapsed, etc.

Rules 11 to 15, inclusive, relate exclusively to mutual companies.

No. 11 requires such companies to set aside for the purpose of paying claims, taxes, and dividends, not less than 75% of all net premiums received.

No. 12 confines expenses for equipment, supplies, rents, salaries, fees, com-

---

[1] 42 Stat. 401, Tit. 5, D.C.Code 1929, § 184 et seq.

[2] 52 Stat. 1233.

[3] In the alternative a surety bond may be filed or if the owner of numerous taxicabs so desires, he may file a $75,000 "blanket" policy or bond with the Commission. These provisions, however, are not pertinent to the present controversy.

missions, and other expenses required to operate the company to 15% of net premiums received.

No. 13 confines the cost of investigation, adjustment, court costs, and services of attorneys to 10%.

No. 14 makes the written consent of the Superintendent essential to the declaration of any dividends.

No. 15 makes the approval of the Superintendent necessary to any contract for salary or fee to any person.

No. 16 provides that no charge or policy fee shall be collected for any service whatsoever in addition to the premium expressed in the policy.

No. 17 forbids a promise to pay a dividend or reward to any policyholder unless approved by the Superintendent.

No. 18 requires that *all* companies shall subscribe and agree to full compliance with the rules; and

No. 19 authorizes the Superintendent to withdraw certification of any company upon failure to comply.

Shortly after the promulgation of the rules appellant protested their illegality and declared it would not be bound by them, and was informed by the Superintendent that in that case he would withdraw appellant's certification and prevent its writing taxicab insurance. Appellant then brought this suit to enjoin and restrain appellees from enforcing the regulations, from cancelling its license, and from taking any action against it affecting its right to transact its lawful business. The District Court denied the injunction and dismissed the complaint, but four days prior to the entry of final judgment the Superintendent of Insurance carried his threat into effect, withdrew appellant's certification, and directed it to accept no further premiums for taxicab insurance. This appeal followed, and we granted a stay pending hearing and decision.

While appellant's challenge is to all the rules, the question as to their validity relates principally to Nos. 11-15 and 19. The answer requires an examination not only of the Act of 1938 but also of the District of Columbia insurance code, D.C. Code 1929, T. 5, § 171 et seq. The former provides that the policy of insurance required by its terms shall be written only by an insurance company authorized to do business in the District of Columbia. This condition appellant admittedly fulfills, and under its license it has written policies covering 826 public motor vehicles with a total possible liability thereunder in excess of $9,000,000. It collects premiums approximating $4,000 weekly, and its present assets apparently aggregate slightly less than $40,000. Notwithstanding this shocking disparity, its financial set-up is within all the requirements of the general insurance laws of the District of Columbia.

The case turns, therefore, upon the authority of the Superintendent (1) to make rules and regulations governing the internal management of a licensed company and (2) to make disobedience of the rules ground for revocation.

■ Considering first the authority conferred on the Superintendent by the Taxicab Act (Act of 1938), we find there nothing more than the power to make reasonable rules and regulations relating to the writing of taxicab insurance and the fixing of maximum rates to be charged. The words—to write insurance and to fix maximum rates—given their broadest meaning, as we have every desire to do in the interest of securing enforcement of the objects of the Act, can, we think, be construed to go no further than to authorize the Superintendent to control the solicitation of the insurance, the terms and conditions of the contract, the rate to be charged, and the enforcement of the provisions of the Act and the general insurance law. So interpreted, the language of the Act, considered in relation to the provision in the general law[4] prohibiting rebates either in the form of commissions or otherwise, is sufficiently broad to enable the Superintendent to prohibit unreasonable commissions to agents, private or corporate, as to which much was said in the argument. But even so, it does not settle the questions involved in the regulations under consideration.

Turning, then, from the special act to other provisions of the general insurance law of the District, we find in Tit. 5, D.C. Code 1929, § 173, authority in the Superintendent to revoke a company's license for failure on its part promptly to furnish him with an annual statement of its true financial condition, and in Sec. 179 power to make an examination of its affairs to determine its solvency. Nowhere else is

---

[4] Tit. 5, D.C. Code 1929, § 180.

authority given to the Superintendent to revoke or suspend a license, nor authority to make rules and regulations concerning the actual internal operation by the company of its business. Sec. 172, which defines his duties, limits them, except in immaterial details, to seeing that the laws in relation to insurance companies are faithfully executed. Sec. 186 provides that a stock insurance company shall not do business in the District unless in addition to its cash capital stock it "shall keep a separate account of all receipts in respect to each class of insurance, as directed by the superintendent", and these must be carried as and form a separate insurance fund to be held as security for the policyholders of that class. But this provision in confined to stock companies, and the section which follows relates to the organization of mutual companies and contains the provisions we have previously set out as to the amount of surplus and reserves which that character of company shall keep and maintain as a condition of doing business.

█ From all of the above it will be seen not only that there is no provision of the general law broad enough to cover regulations governing in the minutest detail the operation and business of an insurance company, but that the statute itself makes a clear distinction between stock companies and mutual companies with respect to maintaining a reserve. Perhaps this distinction as to capital or reserve requirements between stock and mutual companies was in recognition of the difference in the nature of the two kinds of corporations. In the case of a stock company the purpose of organization is primarily to earn money for the stockholders. A mutual company, on the other hand, is one in which the members are both the insurers and the insured, sometimes through a fund made up of cash premiums or of premium notes, sometimes by assessment laid on all members,—in either case the necessity of another sort of reserve fund being absent. Counsel for the Superintendent indicate in the brief that a policyholder in a mutual company in the District of Columbia is subject to assessment and, if this were so, it might be of itself the explanation; but we think the statement is unwarranted since by the terms of appellant's charter no assessment can legally be made against a policyholder to pay a loss. But whatever may have been the reason for the distinction, the fact remains that in the general law nothing more is required of a mutual company than that it shall have at organization and maintain thereafter a surplus of $10,000 and a fund in excess of its present liabilities equal to premium advances, which shall not be less than $10,000. Upon complying with these conditions, the company may obtain a license and do business.

█ We have, therefore, a case in which there is neither express nor implied authority in the Superintendent to make Rules 11-15 or to apply the drastic provisions of those rules solely to mutual companies. Without such authority, the limit of his power is to make rules consistent with the provisions of the law. He cannot add to, amend, or alter the law by regulations. Merritt v. Welsh, 104 U.S. 694, 26 L.Ed. 896; Morrill v. Jones, 106 U.S. 466, 1 S.Ct. 423, 27 L.Ed. 267; United States v. Eaton, 144 U.S. 677, 12 S.Ct. 764, 36 L.Ed. 591; United States v. United Verde Copper Co., 196 U.S. 207, 25 S.Ct. 222, 49 L.Ed. 449; Waite v. Macy, 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892; United States v. Standard Brewery Co., 251 U.S. 210, 40 S.Ct. 139, 64 L.Ed. 229.

█ What we have just said applies to Rules 11-15. Rules 1 and 2, which refer to the form of the policy, may be construed to be in furtherance of the provision which requires that all policies be in the form prescribed by the Commission. Rule 9 is within the terms of Sec. 654 of the 1901 Code,[5] prohibiting rebating. The remainder of the first ten rules and Rule 16 may be sustained as being in furtherance of the declared policy of the act to fix maximum rates and to make taxicab insurance compulsory. Rule 17 may be sustained on the ground that a promise to pay dividends is equivalent to a rebate but not to the extent of authorizing the Superintendent to control the payment of reasonable dividends when declared out of earnings in the ordinary course of business. But Rule 19, which authorizes the Superintendent upon his finding of failure to obey the rules, to withdraw certification, is not only an assumption of power nowhere extended, but on the other hand is contrary to those provisions of the law which require a trial and conviction before that drastic penalty may be imposed.

---

[5] Title 5, D.C.Code 1929, § 180.

A very similar situation arose in United States ex rel. Daly v. MacFarland, 28 App. D.C. 552. A statute authorized the District Commissioners to license plumbers and adopt rules regulating the business. The Commissioners adopted a rule under which licenses could be revoked for violation of the regulations, although the statute imposed only criminal penalties. This court, speaking through Judge Robb, held "That the Commissioners have no authority, and that Congress deems them without authority, to promulgate and enforce a regulation providing for the revocation of a license where the statute contains no express provision for such revocation". See, also, Drake v. United States, 30 App.D.C. 312; United States ex rel. Kreh v. Ingham, 38 App.D.C. 379; Liverpool & London & Globe Ins. Co. v. Clunie, C.C., 88 F. 160, 179; and Grand Lodge A. O. U. W. v. State Insurance Board, 103 Neb. 99, 170 N.W. 617.

That there is immediate necessity for a revision by Congress of the insurance laws in the District of Columbia, the facts shown in this record amply demonstrate. When the compulsory taxicab insurance law was under consideration by the House, on the Report of the Conference Committee, Representative Dirksen pointed out the dangers in the situation and the necessity of amending the insurance code before passing the act.[6] The dangers he anticipated are demonstrated in the facts of this case. They grow out of the provision authorizing a so-called mutual company to assume fantastic liabilities without provision for assessments on its members to make reimbursement, and without the adequate reserves which sound insurance principles have proved to be necessary as a means of protection. It was, doubtless, the recognition of this lack of protection to the public that induced the Superintendent to supplement the statutes with rules and regulations. The end sought was both wise and desirable, but in the present state of the law its accomplishment is possible only by statutory amendment imposing on all companies engaged in this form of insurance the obligation to maintain adequate reserves.

Because of the lack of statutory authority to the Superintendent, we must reverse the order of the trial court and remand the case with instructions to issue a permanent injunction restraining the Superintendent from doing any act under Rule 19—which, together with Rules 11-15, we hold to be illegal and void—to cancel appellant's license to write taxicab insurance.

Reversed and remanded.

---

[6] 83 Congressional Record, 75th Cong., 3d Sess., No. 95, p. 8586 (advance pamphlet).