# DISTRICT OF COLUMBIA *v.* HORNING.

INFORMATION; QUASHING; WRIT OF ERROR: ACQUITTAL; LOAN BUSINESS;
PLACE OF; SUBTERFUGE; CONCLUSIONS OF LAW.

1. It is not only the prerogative, but the duty, of the court to examine into the sufficiency of an information or indictment to charge a crime before requiring the defendant to plead, and, if in his judgment it is fatally defective, he may, with propriety, of his own motion, quash it.

2. The judgment of a police magistrate quashing a criminal information can be reviewed on writ of error as contradistinguished from the lack of jurisdiction to so review a judgment of acquittal. (Citing *District of Columbia* v. *Burns*, 32 App. D. C. 203; *United States* v. *Cella*, 37 App. D. C. 423, and *United States* v. *Cadarr*, 24 App. D. C. 143.)

3. An acquittal or a conviction in a criminal prosecution is not a bar to a later indictment for the same crime, where it appears that the acts were committed at a later date than those involved in the prior case.

4. A business of loaning money upon security in a manner prohibited by law is carried on in the District of Columbia by an unlicensed pawnbroker who has an office in the District, where the application for the loan is received, the security disclosed, and the pledged property kept, although he had a license in Virginia and an office just across the Potomac river, to which he gave free automobile service to the applicants for loans, and at which all that was done was to appraise the security, deliver the money loaned, and to accept repayment of the loan for which a receipt was there given entitling the borrower to a redelivery of the pledged property at the Washington office.

5. Where the unlawfulness of an act is at issue, and the actor selects an unusual method for the express purpose of evading the law, the means employed become quite material in characterizing the transaction.

6. Carrying on any of the acts essential to the complete transaction of a business in a jurisdiction where the doing of the business is prohibited will be subject to the limitations of the law.

7. The rule of strict construction as applied to criminal statutes is relaxed in the interpretation of an act designed to declare and enforce a principle of public policy. (Citing *District of Columbia* v. *Dewalt*, 31 App. D. C. 326; *United States* v. *Cella, supra.*)

8. In an information charging the violation of an act to regulate the business of loaning money on security, where some of the acts involved in the loan transactions complained of were outside of the District of Columbia, allegations of the conclusions of the public prosecutor as to the legal effect of the facts relied upon, such as the statement that the defendant did not "make any loan of money in the District of Columbia," or "receive payment" there, can neither add to, nor detract from, the information, or in any way affect the legal interpretation to be placed upon it.

No. 3132.    Submitted January 9, 1918.    Decided March 4, 1918.

HEARING on an appeal from a judgment of the Police Court of the District of Columbia, quashing an information.

*Reversed and remanded.*

The COURT in the opinion stated the facts as follows:

This cause was brought here on writ of error to the police court of the District of Columbia to review the action of the magistrate in quashing an information against George D. Horning, defendant in error.

The information, the sufficiency of which is challenged, charges, in substance, that defendant in error, Horning, hereafter referred to as defendant, maintained a place of business on Ninth and F streets, this city, on which the following sign appeared:

Warehouse.
Formerly Loan Office George D. Horning.
Branch Office, Dime Messenger Service, Inc., Bonded Messengers.
Automobiles Leave Every Ten Minutes.
Loans on Diamonds, Watches, Jewelry.
Diamonds—Horning's Collateral Bank—Jewelry.
Now making loans at my Virginia Office—Free automobile service between offices.

On the interior of his place of business was posted the following notice:

This establishment is exclusively for storage purposes, and for the settlement of loans made prior to March 7, 1913; no application for loans will be received or considered here; and no examination, appraisement, or valuation of pledges will be made here.

George D. Horning,

Dime Messenger Service, Incorporated.

Advertisements appeared in the newspapers of the city, as follows:

Loans.
Horning,
Relee, Va. (South end of Highway Bridge).
Free automobile from 9th and D Sts., N. W.
Horning.
Loans, Diamonds, Watches, Jewelry.
Free auto service from northeast corner 9th and D Sts., N. W.

It is further alleged that defendant had no financial interest in the messenger service corporation, except that he hired it space in his place of business. This was a branch of a general messenger service, with its main office at 717 Twelfth street, Northwest, this city. This branch office did not confine its business to the accommodation of defendant's customers, but "received, accepted, and filled orders for messenger service generally from business men and others in the neighborhood."

It is charged that at divers times prior to the filing of the information, persons applied at the Washington office of defendant to make loans, and exhibited jewelry and other property which they desired to deposit as security therefor; that they were told that the jewelry or property would not be appraised or valued for loan purposes in the District of Columbia, and that no loans upon the security thereof would be made in the District, but that they might either send the articles to defendant's Virginia office by a messenger from the messenger service company, for which service they would have to pay 10 cents, or defendant would send them to the Virginia office free

of charge in one of his passenger automobiles, a number of which were kept on hand at the Washington office for this purpose; that when articles were sent by messenger a receipt for the articles was given by the messenger service company, and the articles were taken to the Virginia office, where they were appraised, and a pawn ticket and the sum of money loaned delivered to the messenger, who returned to the Washington office and delivered them to the borrower; that when the borrower was transported by automobile the money and pawn ticket were delivered to him at the Virginia office, and he was returned by the automobile either to the Washington office or to any other point in the District to which he desired to be taken, and that when the borrower desired to pay the loan he presented his money and pawn ticket at the Washington office, where he was directed either to send them by messenger to the Virginia office, or take them himself by one of defendant's automobiles, where a warehouse receipt or redemption ticket was given either to the messenger to deliver to the borrower or to the borrower direct, as the case might be, which receipt was presented by the borrower at the Washington office, where he received his property.

It is sought by the information to charge a violation of the provisions of the Act of Congress of February 4, 1913 (37 Stat. at L. 657, chap. 26), entitled "An Act to Regulate the Business of Loaning Money on Security of Any Kind by Persons, Firms, and Corporations Other than National Banks, Licensed Bankers, Trust Companies, Savings Banks, Building and Loan Associations, and Real Estate Brokers in the District of Columbia." It provides, among other things, "that hereafter it shall be unlawful and illegal to engage in the District of Columbia in the business of loaning money upon which a rate of interest greater than 6 per centum per annum is charged on any security of any kind, direct or collateral, tangible or intangible, without procuring license." The act then provides that licensees may charge not exceeding "1 per centum per month on the actual amount of the loan, and this charge shall cover all fees, expenses, demands, and services of every character, including notarial and recording fees and charges, ex-

cept upon the foreclosure of the security." In the present case, defendant in error is charged with conducting a loan business in the District of Columbia without a license, and with charging a greater rate of interest than 6 per cent, to wit, 3 per cent per month, for each month or fraction thereof.

The police magistrate, before arraignment, quashed the information. On application of counsel for the District the writ of error was granted.

*Mr. Conrad H. Syme*, Corporation Counsel, and *Mr. P. H. Marshall*, Assistant, for the plaintiff in error, in their brief cited:

*Bliss* v. *United States,* 105 Fed. 508; *Com.* v. *Cain,* 80 Mass. 9; *Com.* v. *Connors,* 116 Mass. 35; *Com.* v. *Keefe,* 7 Gray, 332; *Cook* v. *Marshall County,* 196 U. S. 261; 12 Cyc. 281; *District of Columbia* v. *Burns,* 32 App. D. C. 230; *Ferguson Contracting Co.* v. *Coal & Coke R. Co.* 33 App. D. C. 159; *Gormley* v. *State,* 37 Ohio St. 120; *People* v. *Townsend,* 3 Hill, 479; *Ricketts* v. *Sun Ptg. & Pub. Asso.* 27 App. D. C. 222; *State* v. *Ingrahcm,* 96 Iowa, 278; *State* v. *Judge,* 43 La. Ann. 1119; *Wendell* v. *Holland–American Line,* 40 App. D. C. 1.

*Mr. Henry E. Davis, Mr. Charles Cowles Tucker, Mr. J. Miller Kenyon,* and *Mr. H. B. F. Macfarland* for the defendant in error, in their brief cited:

*Aurora City* v. *West,* 7 Wall. 82; *Bedford* v. *Eastern B. & L. Asso.* 181 U. S. 227; *Bennett* v. *Eastern B. & L. Co.* 177 Pa. 233: *Berger* v. *Penna. R. Co.* 27 R. I. 583; *Louisville* v. *Pooley,* — Ky. —, 25 L.R.A.(N.S.) 582, 124 S. W. 315; *Cromwell* v. *Sac Co.* 96 U. S. 51; *DeWolf* v. *Johnson,* 10 Wheat. 368; *District of Columbia* v. *Brewer,* 32 App. D. C. 391; *District of Columbia* v. *Burns,* 32 App. D. C. 203; *Ferguson* v. *Coal & C. R. Co.* 33 App. D. C. 159; *Green* v. *Chicago, B. & Q. R. Co.* 205 U. S. 530; *Hopkins* v. *United States,* 4 App. D. C. 437; *Hubbell* v. *United States,* 171 U. S. 203; *Kellogg* v. *Miller,* 13 Fed. 201; *Morton* v. *Macon,* 111 Ga. 162; *Nalle* v. *Oyster,* 230

U. S. 180; *New Orleans* v. *Citizens' Bank*, 167 U. S. 381.; *Philadelphia & R. R. Co.* v. *McKibbin*, 243 U. S. 264; *Rickets* v. *Sun P. & P. Co.* 27 App. D. C. 222; *Saxony Mills* v. *Wagner & Co.* — Miss. —, 23 L.R.A.(N.S.) 834; *Slack* v. *Perrine*, 9 App. D. C. 128; *Smith* v. *Muncie Nat. Bank*, 29 Ind. 158; *Southern Pacific R. Co.* v. *United States*, 168 U. S. 1–48; *United States* v. *Evans*, 30 App. D. C. 58; *Van Vleet* v. *Sledge*, 45 Fed. 743; *Wedderburn* v. *Wedderburn*, 46 App. D. C. 149; *Wendell* v. *Holland–American Line*, 40 App. D. C. 1.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Counsel for defendant objects to the jurisdiction of this court to review on writ of error the action of the court below. It appears that when the case came on for hearing, before defendant had been arraigned, counsel for the District of Columbia "stated in open court * * * in response to an interrogation by the court, that the acts and things which defendant was charged in said information with having committed, and which the District of Columbia claimed to constitute a violation of the Act of Congress of February 4, 1913, * * * were identical in nature and kind with the acts and things which the defendant was charged with having committed at other times, in and by a previous information upon which the defendant had been tried in this court before a jury regularly impaneled, and which jury upon the direction of the court had rendered a verdict of not guilty, and upon which verdict a judgment of acquittal of the defendant had been regularly entered, * * * excepting only that the acts charged in the present information were subsequent in point of time to those involved in said former trial. Thereupon the defendant * * * demanded that he be regularly arraigned in order that he might plead to said information and demand and have a trial by jury. But the court *sua sponte* * * * quashed said information and discharged said defendant upon the ground that as matter of law the facts set forth in the information in this cause did not constitute a violation of said act of Congress."

It is insisted that the magistrate, in the absence of a motion

to quash by defendant, had no power to quash the information, but that he should have permitted the accused to be arraigned, to plead, and to have a jury trial. It is not only the prerogative, but the duty, of the court to examine into the sufficiency of an information or indictment to charge a crime before requiring the defendant to plead. If, in the judgment of the magistrate, it is fatally defective, he may, with propriety, of his own motion, quash it. Even a court is not required to do a vain thing. It is not required to proceed with all the formalities of a criminal trial based upon an information or indictment which it regards as a mere nullity. A criminal information or indictment is quashed upon the theory that the facts charged therein are insufficient to put the accused upon his defense. Hence, a trial based upon such a pleading would be a mere farce. In other words, nothing appears which confers jurisdiction to place a defendant on trial. The defendant, however, is not prejudiced, but is still in position to take advantage of any defense originally available should the judgment be reversed and the sufficiency of the pleading upheld.

The jurisdiction of this court to review on writ of error the judgment of a police magistrate quashing a criminal information, as contradistinguished from our lack of jurisdiction to so review a judgment of acquittal, is stated in *District of Columbia* v. *Burns,* 32 App. D. C. 203, as follows: "Instead of quashing the information and dismissing the prosecution, the court, after hearing some evidence and excluding other, adjudged him not guilty, and discharged him as a result of that judgment. The effect of the judgment is the same as if it had been entered on the verdict of a jury. The defendant cannot be retried for the same offense. * * * The question as to the entire repeal of the earlier act, the operation of which was confined to the District of Columbia by the later general law, is one of great importance, that ought to be authoritatively settled. It is unfortunate, therefore, that the police court did not content itself with quashing the information and dismissing the prosecution, in accordance with its view of the law, without going further and adjudging the defendant not guilty." See also *United*

*States* v. *Cella,* 37 App. D. C. 423; *United States* v. *Cadarr,* 24 App. D. C. 143.

Neither does the former acquittal prevent a review of the case before us. Defendant in error was not even arraigned under the present information. Hence, there was no plea in bar, nor was there an opportunity afforded for such a plea. The mere statement of counsel in open court as to the similarity of the two cases does not amount to a plea of former jeopardy, or furnish the basis for an assignment of error in this court. This plea can be interposed by the defendant alone when it is sought to force him to trial, a stage of the proceeding which has not been reached in this case.

But to avoid possible error in the further progress of the case below, we will dispose of the contention, though it is not properly before us. It appears that the acts charged in the present information were all committed subsequent to those involved in the prior case. It is well settled that an acquittal or a conviction in a criminal prosecution is not a bar to a later indictment for the same crime, where it appears that the acts were committed at a different date from those involved in the former prosecution. Especially is this true where the crime relates to conducting a business in a manner which the law declared to be unlawful.

In *Gormley* v. *State,* 37 Ohio St. 120, the court held that "a conviction for keeping a place where intoxicating liquors are sold in violation of law between designated dates in 1879, and a judgment that such place is a common nuisance, constitute no bar to an indictment for keeping such place between designated days in 1880, although the order under the first conviction, that the defendant should shut up and abate the nuisance, was not obeyed or enforced." To the same effect are *Com.* v. *Hudson,* 14 Gray, 11; *Com.* v. *Connors,* 116 Mass. 35; *State* v. *Shafer,* 20 Kan. 226; *United States* v. *Snow,* 4 Utah, 295, 9 Pac. 686; *Com.* v. *Keefe,* 7 Gray, 332; *People* v. *Sinell,* 131 N. Y. 571, 30 N. E. 47; *Bliss* v. *United States,* 44 C. C. A. 324, 105 Fed. 508. This must be the invariable rule. Otherwise, in the present case, if the former acquittal is a bar to any subsequent prosecution, defendant could continue indefinitely to prosecute

his unlawful business in defiance of the law, and thus effectually nullify the statute.

Coming to the sufficiency of the information to charge an offense under the statute, it will be observed that the act in question declared it unlawful "to engage in the District of Columbia in the business of loaning money upon which a rate of interest greater than 6 per centum per annum is charged on any security of any kind," without first obtaining a license to do so. Defendant had not taken out a license under the act. He is charged with doing business without a license, and with charging interest rates prohibited by the act even if he had taken out a license. The gravamen of the offense here charged is engaging in the business of loaning money in the District of Columbia in a manner prohibited by law. It is conceded that, if done in the District, the acts came within the prohibition of the statute; but it is argued that the information fails to charge that defendant engaged in the business of loaning money upon security in the District of Columbia.

The business of a pawnbroker, as conducted by defendant through his combined District and Virginia offices, consists of a number of elements,—(1) a place where applications for loans are made; (2) the application for the loan; (3) the disclosure of the security; (4) the appraisement of the security; (5) the agreement for the loan and for its repayment; (6) the payment of the money to the borrower and the delivery of the pledge to the broker; (7) the safekeeping by the pledgee of the property pledged; (8) the payment of the loan, with agreed interest; and (9) the return of the pledge. It will be observed that of the elements entering into the transaction five of the nine (1, 2, 3, 7, and 9) were performed in the Washington office.

It appears from the record that defendant conducted a licensed pawnbrokers' business at his Washington office prior to the passage of the statute here in question; that he then obtained a license in Virginia and established an office just across the Potomac river at the "south end of Highway bridge;" that he continued to advertise his Washington office in connection with the conducting of his loan business; that he established free automobile service for those who applied for loans at the Wash-

ington office to transport them to and from the Virginia office;
that all that was done at the Virginia office was to appraise
the security, deliver the money loaned, and to accept repay-
ment of the loan; that the property pawned was brought back
by defendant from the Virginia office and kept in the Wash-
ington office; and that, when the loan was paid off at the Vir-
ginia office, a receipt was given the borrower and he was di-
rected to present it at the Washington office, where the prop-
erty pledged would be delivered to him.  From the foregoing
it may be said that the business of a pawnbroker was not exclu-
sively carried on either in the Washington or Virginia office;
since it took the transactions at both offices to completely enable
defendant to engage in the business.

This is not a contract, the enforcement of which is dependent
upon the law of the jurisdiction in which it is to be performed,
nor is it a proceeding for the enforcement of a contract.  It is a
criminal action to punish the doing of an unlawful business in
this District.  We are not, therefore, concerned with the valid-
ity or invalidity of defendant's contracts in the state of Vir-
ginia.    Citation of authority respecting the jurisdiction of
courts to enforce contracts made in one state to be performed
in another have no analogy.  The law denounces the business;
and when it appears that one is engaged in transactions which
come, in whole or in part, within the prohibition of the statute,
he will be held to be doing business within the purview of the
act.  We are not dealing with a contract which is against public
policy, but with a business conducted in such manner as to make
it unlawful and against public policy.

Laws of this sort are enacted for the protection of the public;
and courts look with disfavor upon attempts, by circumvention
or subterfuge, to escape their restrictions.  True, a lawful act
may not be condemned merely because the person doing it had a
bad motive; but where the unlawfulness of the act is at issue,
and the actor selects an unusual method for the express purpose
of evading the law, the means employed become quite material
in characterizing the transaction.  *Cook* v. *Marshall County,*
196 U. S. 261, 49 L. ed. 471, 25 Sup. Ct. Rep. 233.  Con-
sidering, therefore, the whole transaction, it amounts, in our

opinion, to nothing less than an attempt to continue the pawn-brokerage business at the original Washington office, unfettered by the restrictions of a local license.   The branch office conducted under color of a Virginia license at the "south end of Highway bridge," with its transportation facilities, either by private automobile service furnished by defendant or the dime messenger service, or otherwise, is a mere agency of the local or main concern.   Through this device defendant seeks to escape the penalties of the law and continue to conduct an unlawful business in this District.   The Virginia branch was opened for this purpose, not through a desire to establish a legitimate business in that state, but to enable defendant to conduct a prohibited business here.           .

The statute here is not aimed at the prohibition of a well-defined act which is in itself criminal, but at the regulation of a business which, if conducted in a manner prohibited by the statute, is declared to be against public policy, and which subjects the person engaging therein to the penalties prescribed in the act.   The conducting of a business consists of many elements and many separate acts; and when it appears that any of the acts essential to the complete transaction of the business have been carried on within the jurisdiction where the doing of the business is prohibited, the transgressor will be held to come within the limitations of the act.   The rule of strict construction as applied to criminal statutes is relaxed in the interpretation of an act designed to declare and enforce a principle of public policy.   We must keep in mind the purpose of the legislation and the evils sought to be prohibited, and, if possible, give force and effect to the legislative intent.   *United States* v. *Corbett,* 215 U. S. 233, 54 L. ed. 173, 30 Sup. Ct. Rep. 81; *District of Columbia* v. *Dewalt,* 31 App. D. C. 326; *United States* v. *Cella,* 37 App. D. C. 423.

The information closes with the allegation "that at no time between the said 1st day of February, A. D. 1917, and the date of the filing of this information, did said George D. Horning, or anyone in his behalf, make any loan of money in the District of Columbia or receive payment in the said District of any loan made by him in the State of Virginia, or elsewhere, or accept

or receive in said District any article or thing pledged to secure the payment of any loan made by him; nor did he return or surrender in said District any article or thing so pledged with him, until after the loan to secure which it was pledged had been paid in the State of Virginia, and then only on presentation at his said place of business at said Ninth and D streets, Northwest, of a warehouse receipt or redemption certificate issued in Virginia upon the payment of the loan there; nor did he, or anyone in his behalf, in said District of Columbia, appraise or value for the purpose of making a loan, or for any other purpose, or caused to be appraised or valued, for said purpose, or any other purpose, any article or thing thereafter accepted by him in the State of Virginia as security for a loan made there." · This strange *résumé* of the preceding allegations of the information is seized upon by counsel for defendant as indicative of an abandonment of the case by counsel for the District. It is not within the power of a public prosecutor to limit the force of a criminal charge by appending to the pleading a statement of his own conclusions as to the legal effect of the facts relied upon to establish the commission of the offense charged. This paragraph neither adds to nor detracts from the information. It in no way affects the legal interpretation to be placed upon it.

The judgment is reversed, with costs; and the cause is remanded, with instructions to vacate the order quashing the information, and for further proceedings.

*Reversed and remanded.*