Albert F. **JORDAN**, Appellant,

v.

**ACACIA MUTUAL LIFE INSURANCE CO., Karl W. Corby, Appellees.**

No. 22139.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 7, 1969.

Decided Feb. 20, 1969.

Certiorari Denied June 16, 1969.
See 89 S.Ct. 2101.

---

3. 128 U.S.App.D.C. 165, 385 F.2d 687 (1967), cert. denied, 390 U.S. 948, 88 S.Ct. 1036 (1968).

4. *Id.* at 172, 385 F.2d at 694 (dissenting opinion).

Mr. David P. Sutton, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellant.

Mr. John J. Wilson, Washington, D. C., with whom Messrs. Frank H. Strickler and William E. Rollow, Washington, D. C., were on the brief, for appellees.

Before FAHY, Senior Circuit Judge, LEVENTHAL and ROBINSON, Circuit Judges.

FAHY, Senior Circuit Judge:

It is provided in 35 D.C.Code § 530 (1967), set forth in the margin,[1] that no director or officer of any insurance

---

1. § 35–530. *Officers and directors not to be pecuniarily interested in transactions — Appraisement —Loans on policies.*

No director or officer of any company doing business in the District shall receive any money or valuable thing for negotiating, procuring, recommending, or aiding in any purchase by or sale to such company of any property, or any loan from such company, nor be pecuniarily interested, either as principal, co-principal, agent, or beneficiary, in any such purchase, sale, or loan, nor shall the financial obligation of any such director or officer be guaranteed by such company in any capacity: *Provided,* That nothing herein contained shall prevent any such director or officer from receiving a fee for appraising property for said company or for serving on any committee that passes on the investments of said company: *Provided further,* That nothing herein contained shall prevent a life insurance company from making a loan upon a policy held therein by a director not in excess of the net value thereof. Any person violating any provision of this section shall be guilty of a misdemeanor. (June 19, 1934, 48 Stat. 1151, ch. 672, Ch. III, § 30.) 35 D.C.Code § 530.

company doing business in the District shall receive any money or valuable thing for negotiating any loan from the company or be pecuniarily interested in any such loan. The one exception [2] is that a life insurance company may make a loan to a director upon a policy he holds in the company, in an amount not in excess of the net value of the policy.

In 1962 appellee Acacia, a life insurance company doing business in the District, made a loan of $288,000 to appellee Karl W. Corby and others, secured by mortgage. In March, 1967, while the greater part of this loan was undue and outstanding Mr. Corby was elected to Acacia's Board of Directors, in which position he remains while the loan is still undue and unpaid in substantial part. He became a director notwithstanding in 1953 Acacia had requested and received from appellant Jordan, Superintendent of Insurance of the District of Columbia, his opinion that Section 530 prohibited one from becoming a director who was thus indebted to the company. After Mr. Corby had become a director, Acacia in June, 1967, through its President, again requested the Superintendent's opinion. The Superintendent responded:

> \* \* \* I am unable to concur in the opinion expressed in your letter of June 26 [1967] that a domestic company may hold a mortgage on the property of one of its directors, provided the loan was made prior to his becoming a director. In my opinion the law does not permit a director to have such a pecuniary interest at any time. \* \* \*

It is my view that the statute was intended to guard against conflicts of interest so that the company's financial decisions would invariably be made at arm's length. \* \* \* It seems to me that a life insurance company serves its policyholders in a fiduciary capacity, and I simply do not believe that a debtor-creditor relationship should exist between the fiduciary company and those who control it.

> Of course, no one expects that an awkward situation would arise in the particular case to which you refer, but I think that the law clearly contemplates that a life insurance company will be careful to avoid a relationship which is inherently improper. \* \* \*

Discussions which followed, participated in by a representative of the Corporation Counsel, brought no change in the Superintendent's position, in which he was later supported by a formal opinion of the Corporation Counsel.

Thereafter appellees filed a complaint against the Superintendent for a declaratory judgment and injunctive relief On the basis of the pleadings which ensued, accompanied by affidavits, it became clear, aside from the possibility of appellee Corby becoming involved in a criminal prosecution under the statute, note 1, *supra*, that the right of Acacia to continue doing business in the District and of Mr. Corby to remain a director were brought into question. A justiciable controversy was thus presented for resolution by the District Court, and since no genuine issue of material fact appeared the motions of the parties, respectively, for summary judgment, brought the case to a posture for decision. The District Court,[3] accompanying its action with an opinion orally delivered, granted the motion of appellees and denied that of appellant. The court relied heavily upon the rule that a criminal statute is to be strictly construed and, so construing Section 530, held that it did not bar a person who was inter-

---

2. The first proviso of Section 530, note 1, *supra*, assures that an insurance company will not be deprived, by the terms of the section, of normal services of its officers and directors with respect to the investments of the company.

3. Acacia Mutual Life Insurance Co. v. Jordan, 283 F.Supp. 766 (D.D.C.).

ested as principal in a loan from an insurance company from becoming a director of the company when his interest in the loan arose prior to his becoming a director. This basis for decision is also a principal reliance of appellees. On the Superintendent's appeal we take a different view and reverse.

■ The purpose of Section 530 is more regulatory than criminal in nature. The section appears in our Code under Title 35.—Insurance. It is part of a detailed statutory regulation of that business by a Department of Insurance headed by the Superintendent of Insurance, a statutory officer. Section 530 is not part of our Code devoted to the definition and punishment of crime. The regulatory tenor of the provision is indicated also by its title: *"Officers and directors are not to be pecuniarily interested in transactions * * *"* (*Supra,* note 1.) See F.T.C. v. Mandel Bros., Inc., 359 U.S. 385, 388–389, 79 S.Ct. 818, 3 L.Ed.2d 893. The purpose is to prohibit one who is a director from becoming pecuniarily interested in a loan from the company and, equally, to disqualify one who is pecuniarily interested in such a loan from becoming a director. The section is very detailed in its prohibitions of a director's involvement with his company in a way which might conflict with his personal interest. The dominant purpose is not to punish one who violates the statute, but to secure the fiduciary relationship from being utilized in a manner which might give rise to such a conflict. It is to maintain the company's affairs in conformity with the policy expressed. The addition of the misdemeanor sanction is incidental to this.

■■ The construction contended for by appellees would permit a director to be pecuniarily interested in a loan if it were made by the company before he became a director. This construction is arrived at by considering that the language prohibiting such an interest in "any such * * * loan" as a matter of syntax is limited by the word "such" to a loan referred to in the preceding language of the section, which is then construed to bar one from having a financial interest in a loan made by the company after he has become a director. But, as we have pointed out, it is more consonant with the full content and purpose of the section to interpret "any such * * * loan" in which a director may not have a pecuniary interest to mean any loan by the company to him, with the exception noted of a loan on a life insurance policy. The word "such" is thus interpreted as referring not merely to a loan negotiated at a particular period of a director's relationship to the company but to the character of the transaction previously referred to in the section, that is, a loan. Resort to a rule of strict construction to accomplish the more limited scope of the language is inappropriate; for in such a dominantly regulatory statute the rule of strict construction of a criminal statute is relaxed:

> The rule of strict construction as applied to criminal statutes is relaxed in the interpretation of an act designed to declare and enforce a principle of public policy.

District of Columbia v. Horning, 47 App. D.C. 413, 423.[4]

> [I]t is settled that "though penal laws are to be construed strictly, yet the intention of the legislature must govern in the construction of penal as well as other statutes; and they are not to be construed so strictly as to defeat the obvious intention of the legislature." United States v. Lacher, 134 U.S. 624 [10 S.Ct. 625, 33 L.Ed. 1080]. In that case we cited and quoted from United States v. Winn, 3 Sumn. 209, [Fed. Cas.No.16,740] in which Mr. Justice Story, referring to the rule that penal

4. Appellees point to the difference in the factual situation between *Horning* and this case. The statement in the opinion upon which we rely, however, is clearly applicable and we think it is sound.

statutes are to be construed strictly, said:

" * * * In short, it appears to me, that the proper course in all these cases, is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner, the apparent policy and objects of the legislature."

Johnson v. Southern Pacific Co., 196 U.S. 1, 17–18, 25 S.Ct. 158, 161, 49 L.Ed. 363.

Indeed, remedial legislation of a regulatory nature is to be given a liberal construction. Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564. And, correspondingly, exceptions to a remedial statute must be narrowly construed. Piedmont & N. R. Co. v. I. C. C., 286 U.S. 299, 311–312, 52 S.Ct. 541, 76 L.Ed. 1115; Port of New York Authority v. Baker, Watts & Co., 129 U.S.App. D.C. 173, 392 F.2d 497.

Because of his continued interest in the loan to which we have referred Mr. Corby was not qualified to become a director of Acacia. We so hold not only because of our independent construction of Section 530, but also because this accords with its interpretation by the Superintendent of Insurance, who has primary responsibility for administering the relevant Code provisions. S. E. C. v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668. The Superintendent "shall have supervision of all matters pertaining to insurance, insurance companies, and beneficial orders and associations, subject only to the general supervision of the commissioners." 35 D.C.Code § 101. The Superintendent's sensitivity to the intended thrust of Section 530, expressed to Acacia in 1953, and repeated in 1967, is entitled to weight at out hands. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616; Philadelphia Television Broadcasting Co. v. F. C. C., 123 U.S.App.D.C. 298, 359 F.2d 282. His interpretation is reasonable, best comports with the purpose of the section as a whole, and is not inconsistent with its language.[5] The courts, in giving a fair reading to that language, with the aid of the applicable rules of statutory construction, we think should not depart from that adopted by the Superintendent.[6] S. E. C. v. National Securities; Udall v. Tallman; Philadelphia Television Broadcasting Co. v. F. C. C., all supra.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

5. Compare Hutchins Mut. Ins. Co. of District of Columbia v. Hazen, 70 App.D.C. 174, 105 F.2d 53 (1939), and Drake v. United States ex rel. Bates, 30 App.D.C. 312 (1908).

6. We are advised of the regulation of the Board of Governors of the Federal Reserve System interpreting Section 22(g) of the Federal Reserve Act, 12 U.S.C. § 375a, as amended July 3, 1967. The statute provides:

(1) Except as authorized under this section, no member bank may extend credit in any manner to any of its own executive officers. No executive officer of any member bank may become indebted to that member bank except by means of an extension of credit which the bank is authorized to make under this section. * * *

Under its authority to make regulations to effectuate the purposes and prevent evasions of this section the Board of Governors of the System has provided that the prohibitions of Section 22(g) refer to an executive officer of a member bank who is an executive officer thereof at the time he borrows from or otherwise becomes indebted to the bank, and that accordingly a loan made in good faith to one not then such officer and when the loan is not made in contemplation of his becoming an officer does not disqualify such person from thereafter becoming an officer notwithstanding the indebtedness is outstanding. We note the difference between the scope of the language of Section 530 of our Code and that of Section 22(g) of the Federal Reserve Act. Otherwise we need only comment that we are not called upon to pass upon the validity of the Board's regulation.